Nathaniel G. Kelly, Esq. (SBN 262016)
LAW OFFICES OF NATE KELLY
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel:  (415) 336-3001
esquire@natekelly.com

Attorneys for Plaintiff Donald Norman

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DONALD NORMAN, in the Right of and for the Benefit of Intersango, LLC. | ) Case No.: ) ) |
| | ) VERIFIED SHAREHOLDER ) DERIVATIVE COMPLAINT ) |
| Plaintiff, | ) |
| v. | ) ) |
| PATRICK STRATEMAN, AMIR TAAKI, JAMIE STRATEMAN, | ) **JURY TRIAL DEMANDED** ) ) ) |
| Defendants, | ) ) |
| and | ) |
| INTERSANGO LIMITED LIABILITY CORPORATION and INTERSANGO, LLC | ) ) ) ) |
| Nominal Defendants. | ) ) ) |

## NATURE AND SUMMARY OF THE ACTION

1.  Donald Norman ("Norman" or "Plaintiff"), by and through his attorneys, brings this action derivatively, as a shareholder, on behalf of nominal defendants Intersango LLC and Intersango LTD (collectively "Intersango", the "Company", or the "Companies") and alleges upon personal knowledge as to himself and his own acts, and as to all other matters based on investigations by himself and his attorneys, as follows:

2.  This shareholder derivative action is brought on behalf of the Company against its officers and managing members, Amir Taaki ("Taaki") and Patrick Strateman ("Strateman"), and against Strateman's mother, Jamie Strateman (hereinafter referred to collectively as "Defendants" or "Individual Defendants"). As against individual defendants Strateman and Taaki, this action seeks to remedy Defendants' breaches of fiduciary duties, and other violations of the law that occurred between June 27, 2011 and the present (the "Relevant Period"), which have caused substantial monetary losses to the Company and to its shareholders, as well as other damages, such as to its reputation and goodwill.  As against Jamie Strateman, this action is for conversion, fraud, conspiracy to commit conversion, and conspiracy to commit fraud.

3.  Intersango was created to operate chiefly as a BTC exchange.  Bitcoin ("BTC") is a digital asset and an innovative payment system released as open-source software in 2009.  See, https://BTC.org/BTC.pdf.  The system is peer-to-peer and transactions take place between users without an intermediary.  These transactions are verified by network nodes and recorded in a public distributed ledger called the *block chain*, which uses BTC as its unit of account.  BTC is a cryptocurrency.  It is the first decentralized digital currency and largest in terms of market capitalization.

4.  The Company was originally incorporated in the United Kingdom (UK) as a private limited company, Intersango LTD, on June 27, 2011.  Intersango was also subsequently registered as an LLC in the U.S. on July 5, 2011 in Delaware.

5.  The Company was created upon an agreement by Plaintiff Norman and Defendants Strateman and Taaki that they would own and operate the company as equals.  The partners' business plan indicated that BTC's low transaction fees for international transactions would incentivize adoption and due to the growing internationalization of the world economies, the long term prospects for adoption were good; and further that the value of the BTC (the coins themselves) was extremely likely to rise substantially with increasing adoption.

6.  While the member's consultancy services were primarily responsible for BTC advocacy, its exchange was quite successful, taking, among other fees, fees

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

of a fraction of a BTC for a large number of transactions on a daily basis.  By

October 2012, Intersango's exchanges were trading just under 50,000 BTC a

month.  See, bitcoincharts.com/markets/;

bitcointalk.org/index.php?topic=63877.320; and

bitcointalk.org/index.php?topic=63877.320.  And the partners business plan turned

out to be quite smart.  Not only was Intersango growing within a new and

emerging field, it was acquiring a growth asset.  As of June 2016, the value of BTC

has increased more than 50 fold since 2012.  See, bitcoincharts.com/charts.  Thus,

even without growth in the exchange, Intersango would be generating millions of

dollars per day in revenue had it maintained full operations to today and their

profits, which were intentionally being kept in BTC (rather than exchanged) would

be worth millions more.  To put simply, Intersango was ahead of the curve.

7.  Norman, Taaki, and Strateman all received equal 1/3 shares of Intersango.

Corporate governance documents, such as Bylaws and or Operating agreements

were not formally entered into by the Parties, who acted and governed the business

as if a general partnership.  They were all member managers of Intersango.

Unanimous agreement was obtained for all major company decisions.

Additionally, they were all assigned various roles in the Company.  Norman was

the CEO of the Company and generally in charge of non-technical aspects of

Intersango's operations, including providing the initial operational funding for the

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Company (described in more detail below).  Taaki provided much of the technical expertise for the Company, created software to assist in the long-term vertical integration strategies of the Company, as well as providing the existing user database of a website and service he had previously created called Britcoin. Strateman was the CTO of Intersango and was in charge of many of the technical aspects of the Company, including security of the Company.  Strateman, for security purposes, had exclusive management and control of the BTC database and the BTCs on the Intersango website, which included the profits of Intersango.  He later used this power to unilaterally control and prohibit the disbursement of dividends and BTCs to shareholders.

8.  Intersango developed gradually to become one of the world's most widely recognized BTC exchange platforms.  In the fall of 2012, just when Intersango was starting to become profitable, Strateman used his power and control over the Company's assets to essentially shut Norman and Taaki out of the day-to-day business and operations of Intersango.  From that point to the present day, Strateman has used his position of control of Intersango's finances to usurp complete control over management of the Company.  He has repeatedly, to the detriment of the Company and its shareholders, made completely unilateral decisions on behalf of the Company either without seeking the approval of the other member managers or against their express wishes.  Furthermore, he

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

unreasonably discontinued the registration of new users to Intersango's marketplace just when Intersango was profitable enough to not only sustain itself, but thrive. These actions, as well as others described in greater detail below, significantly injured and decreased the value of Intersango.

9.   Strateman breached his fiduciary duty to the Company and abused his exclusive management power over Intersango's exchanges by forcing his will on the Company and preventing its further growth, to the detriment of the Company. Furthermore, at no point did he seek options to sell the Company or its assets to a third party while it was still profitable, enjoyed a reputation as one of the most prominent BTC exchange marketplaces, had an extensive client list for bitcoin related businesses of the time, and when the technology underlying the BTC exchange marketplaces had significant monetary value.  Strateman has also converted corporate funds by refusing to distribute to its shareholders more than 7,000 BTCs held by the no-longer-operating Company.  As of June 17, 2016, the 7,000 unaccounted for BTC, have a market value of over five million dollars ($5,000,000).  Finally, Strateman committed fraud by intentionally misrepresenting to the other member managers that he would eventually disburse their share of assets of the Company to them, including dividends and BTCs, when he never had any intention of doing so.

10. Individual defendant Taaki breached his fiduciary duties as a member manager and director of the Company by refusing to engage with Norman and Strateman to consider the best path for the Company.  Taaki did not exercise his power as a member manager to insist that Strateman cease converting Company assets.  He also, despite Plaintiff's urging, failed to take any actions when Strateman ceased allowing new registration to Intersango's marketplace.  Finally, Taaki failed to insist that Intersango assets such as dividends and BTCs be distributed to shareholders.  Essentially, when Strateman usurped complete control over the company, Taaki abandoned and abdicated all of his managerial responsibilities and walked away from his duties as a member manager of the Company.

11. These actions listed above collectively constitute breach of fiduciary duties, unjust enrichment, gross mismanagement, and abuse of control on the part of the individual defendants Strateman and Taaki.

12. Strateman used his position within the Company, whereby he controlled site bitcoins, databases, and user information, to essentially shut out Norman completely from the day-to-day operations of Intersango, and usurp complete control over Intersango.  Shortly thereafter, Strateman and Taaki more or less ceased any meaningful communications with Norman.  Instead, Taaki chose to

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

"wait and see" while Strateman's mother Jamie Strateman became a liaison between Norman and Strateman.

13. Norman made repeated requests for a disbursement of Intersango's assets including dividends and BTCs to himself and to the other shareholders. His requests were denied. Instead, Strateman entered into a conspiracy with his mother, Jamie Strateman, both to commit fraud and to commit conversion with respect to Intersango's assets. Strateman repeatedly misrepresented to Norman that Intersango assets including dividends and BTCs would eventually be distributed to Intersango shareholders. He was assisted in these misrepresentations by Jamie Strateman. Furthermore, due to these assurances, Norman delayed taking legal action against Strateman. Indeed, Strateman believed that without this disbursement, Norman would not even have the financial ability to sue to force the disbursement of Intersango's assets to its shareholders. To date, Strateman has refused to disburse Intersango assets including dividends and BTCs to shareholders despite repeated requests to do so. He never had any intention of distributing such assets, and relied on Jamie Strateman's assistance in avoiding such distribution. These actions together constitute fraud and conversion on the part of Strateman and Jamie Strateman, as well as conspiracy to commit fraud and conversion on the part of Strateman and Jamie Strateman.

## JURISDICTION AND VENUE

## THE PARTIES

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

15. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in or maintains in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

16.  Venue is proper in this Court pursuant 20 28 U.S.C. §1391(A) because: (i) one or more of the defendants either resides in or maintains executive offices in this District; (ii) a substantial portion of the transactions and wrongs complained of herein, including defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violations of duties owed to the Company occurred in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

# THE PARTIES

17.   Plaintiff Norman is and was, at times relevant hereto, an owner and holder of Intersango stock.   Plaintiff is a member manager of Intersango, and owns 1/3 of Intersango shares.   Plaintiff resides in Serbia.

18.   Nominal defendant Intersango is a Delaware limited liability corporation with its current principal place of operations located in San Francisco, California.

19.   Defendant Strateman is Intersango's CTO, and has served as an officer of Intersango since its inception on June 27, 2011.   Strateman is also a member manager of Intersango, and owns 1/3 of Intersango shares.   Upon information and belief, Strateman is a resident of San Francisco, California.

20.   Defendant Taaki is a member manager of Intersango, and owns 1/3 of Intersango shares.   Upon information and belief, Taaki resides in Syria.   His exact current location is unknown.

21.   Defendant Jamie Strateman is the mother of Strateman, and has played a significant role in the management of Intersango since 2012.   Upon information and belief, defendant Jamie Strateman resides in San Francisco, California.

# DUTIES OF THE INDIVIDUAL DEFENDANTS

22.   By reason of his position as CTO, and as a member manager and officer of Intersango, and as a fiduciary of Intersango, and because of his ability to control

the business and corporate affairs of Intersango, Strateman owed Intersango and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and was and is required to use his utmost ability to control and manage Intersango in a fair, just, honest, and equitable manner.  Individual defendant Strateman was and is required to act in furtherance of the best interests of Intersango and its shareholders so as to benefit all shareholders equally and not in furtherance of his own personal interest or benefit.

23.   By reason of his position as a member manager of Intersango, and as a fiduciary of Intersango, individual defendant Taaki owed Intersango and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and was and is required to use his utmost ability to control and manage Intersango in a fair, just, honest, and equitable manner.  Individual defendant Taaki was and is required to act in furtherance of the best interests of Intersango and its shareholders so as to benefit all shareholders equally and not in furtherance of his own personal interest or benefit.

24.   Each member manager and officer of the Company owes the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

25.   Strateman, because of his exclusive control over the Intersango's databases, client data, and BTC, was able to and in fact did directly exercise control over the wrongful acts complained of herein.

26.   To discharge his duties, Strateman as a member manager and officer of the Company was required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, Strateman was required to among other things:

   a.   Allow for the reasonable disbursement of Company assets to shareholders including dividends and BTCs.

   b.   Conduct the affairs of the Company over which he had authority in an efficient, business-like manner so as to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock.

   c.   Allow other member managers to fully participate in the management of the Company and receive their input and approval before taking actions that would significantly impact the value of the Company.

   d.   In the event of an unwinding of the Company, and after seeking the approval of the other member managers, to exercise reasonable efforts to find a purchaser for the Company.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

27.   Strateman by virtue of his position as a member manager, officer, and fiduciary of the Company owed to the Company and its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  Strateman's actions involve a knowing and culpable violation of his obligations as a member manager and officer of the Company, the absence of good faith on his part, and a reckless disregard for his duties to the Company and its shareholders that Strateman was aware or should have been aware posed a risk of serious injury to the Company.

28.   Taaki's actions and failure to act to protect the best interests of the Company involve a knowing and culpable violation of his obligations as a member manager of the Company, the absence of good faith on his part, and a reckless disregard for his duties to the company and its shareholders that Taaki was aware or should have been aware posed a risk of serious injury to the Company.  Essentially, after Strateman usurped complete control over the Company, Taaki abdicated and abandoned his managerial responsibilities and no longer took an active role in discharging his duties as a member manager of the Company.  Taaki also failed to take steps to prevent Strateman's harmful actions to the Company when he had a fiduciary duty to do so.

## **FACTUAL BACKGROUND**

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

29.   In April of 2011, Taaki reached out to Norman and asked for Norman's assistance in negotiating consulting rates on behalf of Taaki.  The two had been longtime friends, and they met up in Amsterdam on April 12, 2011, and started working together.

30.   Over the next several weeks, Taaki and Norman decided to pursue a business of BTC-related consulting together. In the spring or early summer of 2011, Strateman was brought in to write code for the business and to receive a percentage of the agreements that Taaki and Norman made with clients.

31.   Shortly thereafter, Norman, Taaki, and Strateman agreed to work together to operate and build a platform allowing BTCs to be bought and sold internationally. Each of them would individually own a 1/3 ownership interest in the business, and would receive 1/3 of the profits and benefits of the business.  Their responsibilities would be divided as follows:

> a.   Taaki would provide his technical expertise. Taaki had already developed a site called Britcoin to bring easy access to BTC to residents of the UK, and this site was part of the initial inspiration for Intersango.  Taaki would provide his existing user base under the Britcoin platform.  Taaki was also responsible for developing a BTC library to be used in a competing wallet implementation, and would help Strateman develop the site.

14

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

   b.  Strateman would provide his technical expertise.  Strateman was the CTO of Intersango and was a specialist in security. He designed, implemented and maintained asset exchange software, as well as integrated multiple payment processers/banks to facilitate automated accounting and reconciliation.  He had exclusive control over the BTCs deposited in the Company's marketplace.  He was also responsible for maintaining the Intersango website.

   c.  Norman would provide the initial funding for the operations.  Norman would also help with non-technical aspects of the business.  For instance, Norman helped with PR and managing press, searching for banking options, and answering support emails.  Norman was also the CEO of the Company.

32.  The Company was incorporated as a private limited company, Intersango LTD, company number 7683978 in England on June 27, 2011.

33.  Intersango LLC was registered in the U.S. on July 5, 2011.  Intersango LLC had the same division of ownership and shares as Intersango LTD, at 1/3 for Norman, Strateman, and Taaki.  The overhead costs for Intersango were split among Intersango LTD (UK) and Intersango LLC (US).

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

34.   Both Intersango LTD and Intersango LLC serviced the same website, Intersango.com.  In essence, both Intersango LTD and Intersango LLC functioned as one company.

35.   Over the next year or two, Norman invested between $60,000 and $70,000 in the business.  Norman also invested 1,000 BTCs (at the time, BTCs were priced at between $5 and $15 a coin).  This money was used to pay for housing, food, numerous international flights and other transportation costs, Company registration expenses, domain costs, Company mail services, banking expenses, double withdrawal expenses, financial losses due to technical issues as the Company grew, new computers and computer related equipment, Skype and other phone credit, and other general expenses.

36.   In the summer of 2011, Taaki initiated a list of withdrawals to process. Later, it was discovered that this list of withdrawals had already been processed by Taaki, and as much as 15,000 GBP might be unaccounted for.  Thereafter, Taaki, Strateman, and Norman amended their agreement as follows:

> a.   Norman agrees to cover the liabilities caused by that day's double withdraws.
>
> b.   Intersango LTD and Intersango LLC and/or Britcoin would monetize as fast as possible instead of continuing to run as a free unsustainable service relying on the accumulated life savings of Norman.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

    c.  Norman would not be responsible or able to pay for housing, food or other general costs after paying for flight tickets for Taaki and Strateman to move back to previous places of residence.

37.  Thereafter, Taaki, Strateman, and Norman met up at the mid-September 2012 BTC conference in London that they were primarily responsible for organizing.  After the conference, the three planned to set up a new living situation where the three of them could live and work together as they previously had done.

38.  Over the two or three months leading up to this September 2012 conference, Intersango LTD and/or Intersango LLC had accumulated enough wealth to finally allow for such an expenditure.

39.  Shortly after the Conference, both Taaki and Strateman became unwelcoming, dismissive, and did not allow Norman to continue to participate in the day-to-day operations of the business.  Norman has since been generally uninvolved in the Intersango LTD and Intersango LLC businesses.

40.  Intersango's USD market stopped trading on or about October 14, 2012.

41.  Shortly thereafter, Intersango, for all practical purposes, ceased to operate at its usual capacity and stopped accepting new registrations on or about November 18, 2012.  This decision was unilaterally made by Strateman who at this point was exercising complete control over the Company.  Taaki did not protest against

Strateman from taking these actions which were obviously against the best interests of the Company.

42.   At the time that the Company stopped accepting new registrations, an accounting of the balances and liabilities of the company clearly showed that the Company not only had enough funds to continue operating, but that the Company had enough funds to continue to expand at an enormous rate.  Intersango at that point was growing at an exponential rate, while the costs of operation were slowing and only growing at a very minimal and fixed costs rate.  The costs of operation were likely to continue to slow and even to decline moving forward due to the completion of software allowing for automation which would save many man hours.

43.   Due to these as well as increased site recognition and other factors, the site was generating significant profits at the time the site stopped accepting new registrations.  Had the site continued to accept new registration, the Company would have continued to grow at an increased rate and would have come to represent a very significant percent of the crypto-currency exchange market, a market which is worth over one billion dollars today.  At the time, Intersango was the number two BTC market exchange after Mt. Gox.

44.   Strateman inexplicably prevented the day-to-day operations of Intersango from continuing, thereby hurting the Company and depriving it of the growth and

18

financial success it otherwise would have achieved.  Furthermore, Strateman

usurped complete control over the company and prevented other member managers

of the Company from taking part in the continued operations of the Company.

Taaki did not oppose him in these actions.

45.   At no point did Strateman explore options for selling the Company, despite

the fact that by that point, the Company had acquired significant value.  The

Company enjoyed significant market recognition as one of the leading BTC

exchanges.  Furthermore, there was significant value to the underlying product—

the BTC exchange marketplace.  Strateman, Norman, and Taaki had all invested

significant time, expert, and expertise into building an exchange that at the time

was quite advanced.  Furthermore, the technology, and trade secrets behind

underlying the exchange, as well as the customer contact lists all had significant

value.  Indeed, there is no logical explanation as to why Strateman would seek to

do nothing with this extremely valuable asset, and could in no way be a valid

business decision.

46.   After Norman was effectively shut out of participating in the Intersango

business, Norman reached out to Taaki repeatedly and on at least two occasions

formally requested Taaki's permission to force Strateman to take certain actions by

asking him to sign a statement to that end.  Unfortunately, by this point Taaki had

completely abandoned and abdicated his managerial role within the Company and

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

distanced himself from taking an active role in the Company decisions, to the detriment of the Company, and in a breach of his fiduciary duties as a member manager of the Company.

47.   Norman repeatedly requested that Intersango's assets including dividends and BTCs be distributed to shareholders, including Norman's own 1/3 ownership stake of Intersango's shares.  He also requested an auditing of the Company to ensure the accuracy of any distribution and information on the Company records which would allow him to verify that all liabilities to Intersango users had been fully and properly handled.

48.   As early as September 2012, Strateman stopped communicating with Norman almost entirely.  Norman was only able to communicate with Strateman irregularly and Strateman deliberately communicated many business details by proxy through his mother, Jamie Strateman.  Jamie Strateman also took over managing the Company's tax returns and legal concerns.  This delegation of managerial responsibilities to Jamie Strateman was done unilaterally by Strateman, without the consent of Norman.  Strateman threatened Taaki by stating that if Norman or Taaki tried to stop him from taking these actions, Strateman would essentially shut down the company, thus leaving Intersango both unable to operate and unable to pay back users.  So essentially, Taaki was left with no choice but to acquiesce to Strateman's actions.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

49.   Intersango was involved in another lawsuit with a third party.  In the suit, Intersango was the defendant.  Strateman, as well as his mother Jamie Strateman, promised Norman on numerous occasions that after that lawsuit was resolved, Intersango's assets, including dividends and BTCs, would be distributed to shareholders.  Upon the resolution of the lawsuit in early 2016 Strateman communicated to Norman a self-imposed deadline for such a distribution.  After this deadline passed, Strateman ceased answering his phone or responding to Norman in any other way.  Strateman has still not distributed Intersango's assets to Norman or the other shareholders, despite Norman's repeated requests that he do so.  To this day, Strateman has complete control of almost all of Intersango's BTC assets, and Norman does not even know the full extent of such assets.

50.   Jamie Strateman has undertaken numerous decisions regarding the administration of Intersango, which were harmful to the Company and its shareholders.

51.   Strateman used Company assets in order to pay for his own legal defenses in the aforementioned lawsuit.  He never sought permission or approval from Norman or Taaki to use corporate assets in this way.  Moreover, he prevented the other member managers from using Company assets to pay for their own legal defenses.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

52.   Upon information and belief, Strateman has dissolved Intersango LTD unilaterally without seeking the advice or consent of Norman or Taaki, the other member managers of Intersango.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

53.   Plaintiff brings this action derivatively in the right and for the benefit of Company to redress injuries suffered, and to be suffered, by the Company as a direct result of breaches of fiduciary duty, unjust enrichment, gross mismanagement, and abuse of control, as well as the aiding and abetting thereof, by individual defendants Strateman and Taaki.  Plaintiff also brings this action against individual defendant Strateman and Jamie Strateman for fraud and conversion, and conspiracy to commit fraud and conversion.

54.   Intersango is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

55.   Plaintiff Norman will adequately and fairly represent the interests of Intersango in enforcing and prosecuting its rights.

56.   Plaintiff Norman is and was an owner of Intersango stock during all relevant times to Defendants' wrongful course of conduct alleged herein, and remains a shareholder of Intersango.

22

57.  The current member managers of Intersango consists of the following individuals: Norman, Taaki, and Strateman.

58.  Defendant Strateman has used his position to assert complete domination and control over Intersango.

59.  As alleged above, despite repeated requests by Norman, Strateman and Taaki have taken no action to disburse Intersango assets to shareholders, including dividends and BTCs.  Furthermore, Strateman has taken over complete control of the Company, preventing Intersango from expanding and continuing to operate in a day-to-day capacity by refusing to allow new users to register with the site. Strateman also did not explore selling the Company or transferring its operations despite pleas from Norman to do so.  Taaki essentially acquiesced to these actions by failing to prevent them.  These actions indicate that the Company's internal controls and communications were severely deficient, and that Strateman and Taaki are in breach of their fiduciary duties to Intersango.  Accordingly, a demand is futile.

60.  During the Relevant Period, Taaki, as a member manager of Intersango, failed to exercise proper oversight over Strateman.  Taaki did not protest or initiate action when Strateman (1) usurped complete control over Intersango's assets to the detriment of the Company, (2) took actions to prevent Intersango from continuing to operate and expand, or (3) refused to disburse Intersango's dividends and BTCs

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

to shareholders.  Essentially, Taaki completely abandoned and abdicated his fiduciary responsibilities as a member manager of Intersango.  Because of all of this, each of the Defendants Strateman and Taaki faces a sufficiently substantial likelihood of breach of his fiduciary duties.  Since together the Defendants collectively make up 2/3 of the member managers of Intersango, demand is futile.

61.  Jamie Strateman entered into a conspiracy with Strateman to commit fraud by misrepresenting to Norman that Intersango's assets would be disbursed to shareholders, and intended that he rely on that misrepresentation.  Jamie Strateman also entered into a conspiracy with Strateman to commit conversion by working with Strateman to prevent the distribution of Intersango assets to Norman as well as other shareholders.  Since Jamie Strateman is Strateman's mother, and Strateman himself committed the underlying torts, he is unlikely to assent to or initiate a lawsuit against her, so demand is futile.

62.  Defendants Strateman and Taaki are incapable of impartially considering demand to commence and vigorously prosecute this action.

63.  Plaintiff has not made any demand on shareholders of the Company to institute this action since such demand would be a futile and useless act since the other two shareholders are named defendants in this action.

## FIRST CLAIM FOR RELIEF

### Against Individual Defendants Strateman and Taaki

24

## Breach of Fiduciary Duty

64.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

65.  Individual defendants Strateman and Taaki owed and owe Intersango fiduciary obligations.  By reason of their fiduciary relationship, the individual defendants owed and owe Intersango the highest obligation of good faith, fair dealing, loyalty, and due care.

66.  Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith, and supervision.

67.  Individual Defendant Strateman knew or was reckless or grossly negligent in not knowing that he had significantly injured the Company and its shareholders by usurping complete control over the finances and management of Intersango to force his will on the Company and prevent its further growth to the detriment of the Company.  Strateman's decision to inexplicably discontinue new user registration for the Company's BTC marketplace prevented the Company from further expanding just as it was starting to become profitable.  Furthermore, Strateman prevented the Company from continuing to operate normally and prevented the other member managers from being involved in the day-to-day operations of the Company.  Strateman did not responsibly use Company's assets to pursue avenues of growth for the Company.  Once he unilaterally decided to

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

start to wind-down the Company, Strateman did not seek potential purchasers for the Company at the time when the Company had significant value.  Finally, Strateman continuously refused to disburse Intersango assets including dividends and BTCs to shareholders of the Company, despite repeated promises to do so. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

68.   As a direct and proximate result of Strateman's failure to perform his fiduciary obligations, Intersango has sustained significant damages. As a result of the misconduct alleged herein, Defendant Strateman is liable to the Company.

69.   Individual Defendant Taaki knew or was reckless or grossly negligent in acquiescing to and not preventing Strateman's actions listed above.  As a member of the Board of Directors of Intersango, Taaki had a fiduciary interest to protect the best interests of the Company.  Taaki failed in these duties and essentially ratified Strateman's actions by allowing him to perform the above referenced actions, even when Norman requested Taaki's cooperation in forcing Strateman to take certain actions to protect the Company.  Essentially, Taaki abandoned and abdicated his role as a member manager of the Company when Strateman usurped complete control over the Company.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

70.  As a direct and proximate result of Taaki's failure to perform his fiduciary obligations, Intersango has sustained significant damages.  As a result of the misconduct alleged herein, Defendant Taaki is liable to the Company.

## SECOND CLAIM FOR RELIEF

**Against Individual Defendants Strateman and Jamie Strateman**

**Conspiracy to Commit Conversion of Corporate Funds**

71.  Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72.  A conspiracy is an agreement by two or more persons to commit a wrongful act.  Such an agreement may be made orally or in writing or may be implied by the conduct of the parties.

73.  Strateman hatched a plan to convert Intersango's corporate assets, and he entered in a conspiracy with Jamie Strateman to achieve this objective.  Thus both individual defendants Strateman and Jamie Strateman are liable for conspiracy to convert corporate funds.

74.  In order to be liable for conspiracy, the plaintiff must prove that (1) the defendant was aware of the co-conspirators' planned wrongful act; and (2) the defendant agreed with the co-conspirator and intended that the wrongful act be committed.

75.   Furthermore, a conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and interests of the alleged co-conspirators.  The plaintiff is not required to show that the defendant personally committed a wrongful act or that she knew all the details of the agreement.

76.   Conversion is the wrongful exercise of dominion over the property of another.  The elements of a conversion are: (1) that the plaintiff owned, possessed, or had a right to possess the property at the time of conversion; (2) that the defendant intentionally and substantially interfered with the plaintiffs property (i.e. by taking possession of the property, preventing the plaintiff from having access to the property, destroying the property, or refusing to return the property after demand for its return); (3) that the plaintiff did not consent; (4) that the plaintiff was harmed; and (5) that defendant's conduct was a substantial factor in causing the plaintiff's harm.

77.   Here, Strateman never intended to distribute any of Intersango's assets to its other shareholders.  Strateman repeatedly assured Norman that he would disburse Intersango assets to Norman and other shareholders eventually, but in fact planned all along to keep the assets including the BTCs for himself.  He conspired with Jamie Strateman, his mother in this regard, and had her pass along assurances to Norman that Norman would eventually receive his share of Intersango assets.  He

used his mother as a legal proxy in an attempt to avoid legal or civil exposure for the failure to gain approval for the Intersango actions he took upon himself. Strateman and Jamie Strateman also continually colluded to thwart Norman's access to an accounting of Intersango assets, so that he would not know exactly how much the Company or his shares were worth.  Thus Strateman should be found liable for conspiracy to convert corporate funds and other assets.

78.  Jamie Strateman's role in conspiring to deny Norman and other shareholders their assets clearly shows she was part of a conspiracy hatched with Strateman to conceal and convert Intersango assets and later claim that such assets no longer existed or were greatly depleted.  Accordingly, Jamie Strateman should be found liable for conspiracy to commit conversion.  By participating in the conspiracy, Jamie Strateman effectively adopted as her own the torts of other co-conspirators within the ambit of the conspiracy.  In this way, she has incurred tort liability co-equal with the immediate tortfeasor, her son Strateman.  See, *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511 [28 Cal.Rptr.2d 475, 869 P.2d 454].

## THIRD CLAIM FOR RELIEF

### Against Individual Defendant Strateman and Jamie Strateman

### Conversion of Corporate Funds and Other Assets

29

79.   As discussed above, individual defendants Strateman and Jamie Strateman entered into a conspiracy to convert corporate funds and other assets.  Furthermore, they realized the objectives of that conspiracy, and should each be found liable for conversion of corporate funds and other assets.

80.   Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are: (1) that the plaintiff owned, possessed, or had a right to possess the property at the time of conversion; (2) that the defendant intentionally and substantially interfered with the plaintiffs property (i.e. by taking possession of the property, preventing the plaintiff from having access to the property, destroying the property, or refusing to return the property after demand for its return); (3) that the plaintiff did not consent; (4) that the plaintiff was harmed; and (5) that defendant's conduct was a substantial factor in causing the plaintiff's harm.

81.   Here, Plaintiff Norman had a right to possess 1/3 of Intersango's assets at the time of conversion, as evidenced by the initial agreement by Plaintiff Norman and defendants Strateman and Taaki.

82.   Strateman intentionally and substantially interfered with Norman's property rights by taking advantage of his position of control over Intersango's finances to refuse to disburse Intersango's assets to its shareholders, including the shares that Norman had a right to possess, even after Norman had made repeated requests that

30

these assets be disbursed to him and other shareholders.  He was assisted in this interference by his mother, Jamie Strateman.

83.   Norman did not consent to Strateman taking complete control over Intersango's assets, and did not consent to him retaining control upon the demand for return of the assets.

84.   Norman was harmed by Strateman refusing to disburse Intersango assets to shareholders.  Norman was harmed initially when Strateman took advantage of his position and grossly mismanaged Intersango assets (including Norman's share of assets), and has further been harmed by Strateman's continued refusal to return Norman's 1/3 share of Intersango's assets to him.  In this regard, Jamie Strateman's actions were part of the harm as well.

85.   Strateman's actions and his refusal to disburse Intersango shares to Norman and the other Intersango shareholders, with the help of Jamie Strateman were substantial factors in causing Norman's harm.

86.   Finally, upon information and belief, Strateman, and his mother Jamie Strateman, both currently possess all of Intersango's assets, which they have illegally and without authorization converted from the Company.

## FOURTH CLAIM FOR RELIEF

**Against Individual Defendant Strateman and Jamie Strateman**

**Conspiracy to Commit Fraud**

87.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

88.   A conspiracy is an agreement by two or more persons to commit a wrongful act.  Such an agreement may be made orally or in writing or may be implied by the conduct of the parties.

89.   Strateman hatched a plan to commit fraud by misrepresenting to Intersango shareholders that Intersango assets would eventually be distributed to them. Strateman entered into a conspiracy with Jamie Strateman to achieve this objective.  Thus both individual defendants Strateman and Jamie Strateman should be found liable for conspiracy to commit fraud.

90.   In order to be liable for conspiracy, the plaintiff must prove that (1) the defendant was aware of the co-conspirators' planned wrongful act; and (2) the defendant agreed with the co-conspirator and intended that the wrongful act be committed.

91.   Furthermore, a conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and interests of the alleged co-conspirators.  The plaintiff is not required to show that the defendant personally committed a wrongful act or that she knew all the details of the agreement.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

92. The elements of fraud, which give rise to the tort action for deceit are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud; i.e. to induce reliance; (4) justifiable reliance; and (5) resulting damages. To maintain any fraud action, a plaintiff must show that he or she changed reliance upon the alleged fraud and was damaged by that change of position.  (Civ. Code § 1709).

93. Here, Strateman committed fraud.  Strateman misrepresented and made false statements to Norman that Norman's shares of Intersango assets would eventually be returned to him.  Jamie Strateman was aware these comments were made, and made such misrepresentations and false statements herself to Norman.  Both Strateman and Jamie Strateman intended that the fraud be committed, and assisted each other in doing so.  Jamie Strateman acted as Strateman's proxy, and on numerous occasions told Norman that Intersango assets would eventually be distributed to shareholders.  However, both Strateman and his mother Jamie Strateman never intended for assets to eventually be distributed in this way.  To that end, for some time, they have worked in concert to conceal the full extent of Intersango's assets from the plaintiff and have refused his requests for an updated accounting of Intersango's assets and financial condition.

94. Both Strateman and his mother Jamie Strateman had an intent to defraud and induce reliance, as they both told Norman that Intersango's assets would

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

eventually be disbursed to shareholders in order to prevent Norman from taking immediate legal action to recover his assets.

95.   Norman justifiably relied on these assurances by Strateman and his mother Jamie Strateman, because Norman believed that Strateman, by virtue of his position of fiduciary responsibility to the Company was working in Intersango's best interests, and that assets would eventually be disbursed.

96.   Finally, Norman and other shareholders have suffered damages in that none of Intersango's assets have been disbursed to them.

97.   As alleged above, Strateman committed the tort of conversion of Intersango's assets.  Jamie Strateman should be found responsible for conspiracy to commit conversion because her actions show that she entered into a conspiracy with Strateman to convert Intersango assets.

98.   In order to be liable for conspiracy, the plaintiff must prove that (1) the defendant was aware of the co-conspirators' planned wrongful act; and (2) the defendant agreed with the co-conspirator and intended that the wrongful act be committed.

99.   Furthermore, a conspiracy may be inferred from circumstances, including the nature of the acts done, the relationships between the parties, and interests of the alleged co-conspirators.  The plaintiff is not required to show that the defendant

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

personally committed a wrongful act or that she knew all the details of the agreement.

100. Here, Strateman never intended to return any of Intersango's assets to Norman.  Strateman repeatedly assured Norman that he would disburse Intersango assets to Norman and other shareholders eventually, but in fact planned all along to keep the assets including the BTCs for himself.  He conspired with Jamie Strateman, his mother in this regard, and had her pass along assurances to Norman that Norman would eventually receive his share of Intersango assets.  They also continually colluded to thwart Norman's access to an accounting of Intersango assets, so that he would not know exactly how much the company or his shares were worth.

101. Indeed, Jamie Strateman's role in conspiring to deny Norman and other shareholders their assets clearly shows she was part of a conspiracy hatched with Strateman to conceal and convert Intersango assets and later claim that such assets no longer existed.  Accordingly, Jamie Strateman should be found liable for conspiracy to commit conversion.  By participating in the conspiracy, Jamie Strateman effectively adopted as her own the torts of other coconspirators within the ambit of the conspiracy.  In this way, she has incurred tort liability co-equal with the immediate tortfeasors.  See, *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511 [28 Cal.Rptr.2d 475, 869 P.2d 454].

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## FIFTH CLAIM FOR RELIEF

**Against Individual Defendants Strateman and Jamie Strateman – Fraud**

102.  Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

103.  As discussed above, individual defendants Strateman and Jamie Strateman entered into a conspiracy to commit fraud.  Furthermore, they realized the objectives of that conspiracy, and should each be found liable for fraud.

104.  The elements of fraud, which give rise to the tort action for deceit are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud; i.e. to induce reliance; (4) justifiable reliance; and (5) resulting damages.  To maintain any fraud action, a plaintiff must show that he or she changed reliance upon the alleged fraud and was damaged by that change of position.  (Civ. Code § 1709).

105.  Defendant Strateman committed fraud by misrepresenting to Norman and other shareholders that he would disburse dividends and BTCs to them when he never in fact intended to do so, and his motive throughout was to retain such assets for himself.  He was assisted in these actions by Jamie Strateman, who acted as his proxy in dealings with other shareholders, and thus committed fraud herself.

106.  Here, Defendant Strateman made misrepresentations to Plaintiff Norman. First, he misrepresented to Norman that he would eventually disburse Intersango

assets including dividends and BTCs to Intersango's shareholders, including Norman.  Second, upon information and belief, Strateman has concealed the remaining BTCs of the Intersango marketplace in order to claim that no BTCs exist anymore.  Individual defendant Jamie Strateman has also made such misrepresentations, and has assisted Strateman in the concealment of Intersango's assets.

107.  Individual defendants Strateman and Jamie Strateman each together and individually had an intent to defraud and induce reliance, and on numerous occasions, they both told Norman that Norman and other shareholders would eventually receive their share of Intersango's assets.  These assurances were made in order to prevent Norman from taking immediate legal action to recover his assets, thereby providing Strateman and Jamie Strateman with time to conceal and/or use all of the remaining assets in Intersango's BTC marketplace.

108.  Furthermore, Strateman believed that without the disbursement of Intersango's assets, Norman would not have the financial means to bring civil litigation against Strateman for his actions.

109.  Norman justifiably relied on the statements of individual defendants Strateman and Jamie Strateman.  Norman still believed that as a member manager and officer of Intersango, Strateman would act in the Company's best interest and

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

eventually return assets.  Furthermore, he believed Jamie Strateman's statements because she was acting as Strateman's proxy.

110.  Finally, as a result of individual defendants Strateman and Jamie Strateman's actions, Norman and the other shareholders of Intersango have been damaged in that Strateman and/or Jamie Strateman continue to possess and retain almost all of Intersango's assets, have possibly wasted a large amount of such assets, and appear to have no intention of ever distributing anything but possibly a token portion of the assets to any of the Company's shareholders.

## SIXTH CLAIM FOR RELIEF

### Against Defendant Strateman – Unjust Enrichment

111.  Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

112.  By his wrongful acts, Defendant Strateman was unjustly enriched at the expense of and to the detriment of Intersango.

113.  Strateman had full access to Intersango's assets by virtue of his position with the Company as a member manager and as the CTO.  He was provided with such access so that at all times he could work in the best interests of the Company and promote its growth.  Strateman was unjustly enriched in that he has abused this access to seize Intersango's assets for himself, to the detriment of the Company and its shareholders.

114.  Plaintiff, as a shareholder and representative of Intersango, seeks restitution from Strateman, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Strateman from his wrongful conduct and fiduciary breaches, including but not limited to all of the BTCs and other assets maintained on the Intersango marketplace at the time that Strateman unilaterally decided to wind down the company.

115.  Plaintiff, on behalf of Intersango, has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

**Against Defendant's Strateman and Taaki – Gross Mismanagement**

116.  Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

117.  Individual defendants Strateman and Taaki had a duty to Intersango and its shareholders to prudently supervise, manage, and control the operations, business and finances of Intersango.  Individual defendants Strateman and Taaki by their actions, and by engaging in the wrongdoing alleged herein, abandoned and abdicated their duties with regard to prudently managing the business of Intersango in a manner consistent with the duties imposed on them by law.

118.  By committing the misconduct alleged herein, Strateman and Taaki breached their duties of due care, diligence, and candor in the management and

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

administration of Intersango's affairs and in the use and preservation of the Company's assets.

119.  During the course and discharge of their duties, Strateman and Taaki were aware of the unreasonable risks and losses associated with their misconduct. Nevertheless, Strateman prevented Intersango from registering new users, and Taaki did nothing to stop him.  They knew that collectively these actions had an unreasonable risk of damage to Intersango, thus breaching their duties to the Company.  As a result, Strateman and Taaki grossly mismanaged Intersango, thereby causing damage to the Company.

120.  By their actions and inactions alleged herein, individual defendants Strateman and Taaki abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Intersango in a manner consistent with their role as directors of the company.

121.  As a direct and proximate result of Strateman and Taaki's gross mismanagement and breaches of duty alleged herein, Intersango has sustained and will continue to sustain significant damages in the millions of dollars.

122. As a result of the misconduct and breaches of duty alleged herein, individual defendants Strateman and Taaki are liable to Intersango.

## EIGHTH CLAIM FOR RELIEF

**Against Individual Defendants Strateman and Taaki – Abuse of Control**

40

123. Plaintiff incorporates by reference and realleges each and every allegation contained herein as though fully set forth herein.

124. The conduct of Strateman and Taaki constituted an abuse of their ability to control and influence Intersango for which they are legally responsible.

125. By reason of the foregoing, Intersango has been damaged and has sustained, and will continue to sustain irreparable injury.  Plaintiff, as a shareholder of Intersango, seeks damages for this abuse of control by defendants on behalf of Intersango.

//

## NINTH CLAIM FOR RELIEF

### Accounting

126. Plaintiff demands an accounting of all of Intersango's assets. Plaintiff also demands the opportunity to examine and inspect corporate books including but not limited to all wallet, site, user and non-user transactions, records, databases, fees, and other variables which may be deemed necessary for proper auditing and verification.

127. Plaintiff demands that individual Defendant Strateman provides all information pertaining to Intersango's BTC wallets, used and current, so that Plaintiff can access information regarding BTC transactions.

### PRAYER FOR RELIEF

41

**Wherefore, Plaintiff demands judgment as follows:**

A. Against individual defendant Strateman and in favor of the Company for the amount of damages, no less than $200,000,000, sustained by the Company as a result of Strateman's breach of fiduciary duties, conversion, fraud, conspiracy to commit conversion, conspiracy to commit fraud, unjust enrichment, gross mismanagement, abuse of control, and to provide a full accounting of Intersango's assets for the relevant period;

B. Against individual defendant Taaki and in favor of the Company for the amount of damages sustained by the Company as a result of Taaki's breach of fiduciary duties, gross mismanagement, and abuse of control;

C. Against individual defendant Jamie Strateman and in favor of the Company, in the amount of no less than $7,000,000 for the amount of damages sustained by the Company as a result of Jamie Strateman's conversion, fraud, conspiracy to commit conversion, and conspiracy to commit fraud;

D. Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

individual defendant's assets so as to assure that plaintiff on behalf of Intersango has an effective remedy;

E.  Awarding to Intersango restitution from individual defendants Strateman and Taaki, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

F.  Awarding to plaintiff the costs and disbursements of the action, including reasonable attorney's fees and expenses; and

G.  Granting such other and further relief as the Court deems just and proper.


Respectfully Submitted,

DATED: June 22, 2016                    **LAW OFFICES OF NATE KELLY**


By: *Nate Kelly*
      Nathaniel G. Kelly


Law Offices of Nate Kelly
388 Market Street, Suite 1300
San Francisco, CA 94111
(415) 336-3001
Esquire@natekelly.com

Attorneys for Plaintiffs

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


DATED: June 22, 2016                **LAW OFFICES OF NATE KELLY**


By: *Nate Kelly*
    Nathaniel G. Kelly


Law Offices of Nate Kelly
388 Market Street, Suite 1300
San Francisco, CA 94111
(415) 336-3001
Esquire@natekelly.com

Attorneys for Plaintiffs

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## VERIFICATION

**I SWEAR (OR AFFIRM) UNDER THE PENALITIES FOR PURJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING STATEMENTS, INCLUDING BUT NOT LIMITED TO THOSE CONCERNING THE DERIVATIVE ACTION, INTERSANGO, PATRICK STRATEMAN, JAMIE STRATEMAN, AND AMIR TAAKI ARE TRUE AND CORRECT TO THE BEST OF KNOWLEDGE AND UNDERSTANDING.**

Dated: this 23rd day of June, 2016.

Donald Norman, Plaintiff

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT