Nathaniel G. Kelly, Esq. (SBN 262016)
LAW OFFICES OF NATE KELLY
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel:  (415) 336-3001
esquire@natekelly.com

Attorneys for Plaintiff Donald Norman

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| DONALD NORMAN, in the Right of and for the Benefit of Intersango, LLC. | Case No.: 4:16-cv-03587-YGR |
| Plaintiff, | **PLAINTIFF DONALD NORMAN'S OPPOSITION TO DEFENDANT PATRICK STRATEMAN'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)** |
| v. | Hearing Date:     November 29, 2016 |
| PATRICK STRATEMAN, AMIR TAAKI, JAMIE STRATEMAN, | Time:                    2:00 PM<br>Dept:                    Courtroom 1 – 4th Floor |
| | Judge: Honorable Yvonne Gonzalez Rogers |
| Defendants, | Amended Complaint Filed: October 11, 2016 |
| and | |
| INTERSANGO LIMITED LIABILITY CORPORATION and INTERSANGO, LLC | |
| Nominal Defendants. | |

# TABLE OF CONTENTS

**Page**

I.   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS…………………………………………………………………… 1

II.  STATEMENT OF ISSUES……………………………………………………..2

III. MOTION……………………………………………………..…………..3

IV.  FACTS…………………………………………………………....…….....3

V.   ARGUMENTS………………………………………………………….....3

    a.   Plaintiff's Claim for Violations of the Securities Act of 1933 And The Securities
        Exchange Act of 1934 Does State a Claim……………………………………3

        1.   Plaintiff's Membership Interest In Intersango Does Qualify As A
            Security Under the 1933 and 1934 Acts………………………..3

        2.   Plaintiff's Alleged Transactions Did Not Occur Entirely Outside
            The U.S., And Therefore The Federal Securities Laws Do Offer
            Relief To Him……………………………………………..…4

    b.   Because Plaintiff Has Asserted a Colorful Federal Cause of Action, This Court
        Should Exercise Supplemental Jurisdiction Over The Remaining Claims………..4

    c.   Plaintiff Has Sufficiently Stated Multiple Claims for Relief Under Delaware Law
        In His First Amended Complaint Such That The Court Should Deny Defendant's
        Motion To Dismiss The Complaint Pursuant To FRCP 12(b)(6)………..……...5

        1.   Plaintiff's Claims Satisfy The Standard of FRCP 12(b)(6) And Are
            Plausible On Their Face……………………………………….5

        2.   Plaintiff Has Pleaded His Fraud Based Claims With Particularity..6

        3.   Plaintiff has Properly Complied With Federal And State
            Requirements to File a Derivative Action…………………...…6

            a.   Plaintiff Verified the Original Complaint As Required by
                FRCP 23.1. Although Plaintiff Did Not Verify The First

Amended Complaint, This Is a Procedural Issue Which Can Be Easily Rectified and Should Not Warrant Dismissal....6

b. Plaintiff Has made a particularized showing why Pre-Suit Demand Would Be Futile Citing To Relevant Delaware Case Law for a Derivative Action..........................7

    i. The Directors Are Interested......................8

    ii. The Directors Are Not Independent................10

4. Plaintiff' Fraud and Conspiracy To Commit Fraud Claims State Claims Upon Which Relief Can Be Granted And Are Not Time-Barred.................................................................12

a. The Fraud Based Claims Satisfy Both Delaware Law And FRCP 9(b)......................................12

b. The Fraud Based Claims Are Not Time-Barred Under Delaware Law.....................................18

5. The FAC States a Viable Claim For Conversion and Conspiracy To Commit Conversion..................................20

6. The FAC States a Viable Claim For Breach Of Fiduciary Duty...21

a. Plaintiff Presents a Viable Claim For Breach Of Fiduciary Duty in the First Amended Complaint And Underlying Wrongful Acts Have Been Pleaded Sufficiently...........21

b. Plaintiff's Claim For Breach Of Fiduciary Duty Is Not Time-Barred...........................................22

7. The FAC States a Viable Cause Of Action For Unjust Enrichment Which Is Not Time Barred.................................23

VI. Conclusion.........................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Abry Partners V, LP v. F & W Acquis. LLC, 891 A.2d 1032 (2006)...........................13

Ackerman v. Northwestern Mut. Life Ins. Co., 172 F.3d 467 (7th Cir. 1999).....................6

Airborne Health, Inc. v. Squid Soap, LP, 984 A.2d 126 (Del. Ch. 2009)...........................13

Aronson v. Lewis, 473 A.2d 805 (Del. 1984)....................................................................7, 8

Ashcroft v. Iqbal, 556 U.S. 662 (2009).................................................................................1

Balistreri v. Pacifica Police Dep't, 901 F.2d 696 (9th Cir. 1990).......................................5

Beard Research, Inc. v. Kates, 8 A.3d 573 (Del. Ch. 2010)...............................................22

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)..........................................................1, 5

Bovay v. HM Byllesby & Co., 88 F.2d 990 (5th Cir. 1937).............................................19

Braddock v. Zimmerman, 906 A.2d 776 (Del. 2006)....................................................8, 11

Glenbrook Capital Ltd. P'ship v. Kuo, 525 F. Supp. 2d 1130, 1147  (N.D. Cal. 2007)..........7

Guttman v. Huang, 823 A.2d 492, 503 (Del. Ch. 2003).....................................................8

Nemec v. Shrader, 991 A.2d 1120 (Del. 2010)..................................................................23

Orman v. Cullman, 794 A.2d 5, 25 (Del. Ch. 2002)..........................................................11

Pogostin v. Rice, 480 A. 2d 619 (Del. 1984)..................................................................9, 10

Rales v. Blasband 634 A.2d 927 (Del. 1993)............................................................7, 8, 10

Rattner v. Bidzos, 2003 WL 22284323 (Del. Ch. 2003).....................................................8

In re dean witter P'ship Litig., 725 A.2d 441 (Del. 1999).................................................19

In Re Maxxam, Inc., 659 A.2d 760 (1995)........................................................................19

In Re Nat'l Auto Credit, Inc. S'holders Litig., 2003 WL 139768 (Del Ch. Jan. 10, 2003)...........7

In re Verisign, Inc., Derivative Litig., 531 F. Supp. 2d 1173 (N.D. Cal. 2007)..................7, 10

Kahn v. Seaboard Corp. Civil Action No. 11485, Court of Chancery of Delaware (1993).........19

Trenwick Am. Litig. Trust v. Ernst & Young LLP, 906 A.2d 168 (Del. Ch. 2006)................ 13

**Statutes and Regulations**

28 U.S.C. § 1367(c)(3)...............................................................................................4

**Federal Rules of Civil Procedure**

FRCP 9(b)...........................................................................................1, 2, 3, 6, 13

FRCP 12(b)(6).........................................................................................1, 3, 5, 6

FRCP 23.1.......................................................................................... 1, 2, 3, 6, 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Donald Norman, ("Plaintiff"), respectfully submits this Response in Opposition to the Motion to Dismiss filed by Patrick Strateman ("Defendant"). Defendant has moved this Court to dismiss Plaintiff's First Amended Shareholder Derivative Complaint ("FAC") pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted and pursuant to FRCP 23.1 alleging that Plaintiff failed to verify the FAC. Defendants has also moved this Court to dismiss all eight causes of action (breach of fiduciary duty, conspiracy to commit conversion of corporate funds; conversion of corporate funds and other assets; conspiracy to commit fraud; fraud; unjust enrichment; violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934; and accounting). Defendant also moved to dismiss the fraud and conspiracy causes of action under FRCP Rule 9(b) for failure to plead those claims with the requisite level of particularity.

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate only when the complaint does not give a defendant fair notice of a legally cognizable claim and the basis on which it rests. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (citing *Twombly,* 550 U.S. at 555). In considering whether the complaint is sufficient to state a claim, a court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986).

As will be argued below, Plaintiff has presented material allegations and facts sufficient to support all its claims raised in the FAC. Indeed, Plaintiff has provided specific examples of wrongs perpetrated by Defendant that include the nature of such wrongs, including the who,

what, where, and when of such wrongs sufficient to meet even the heightened pleading requirements for the fraud claims pursuant to FRCP Rule 9(b). Construing the allegations in the light most favorable to the plaintiff, Plaintiff deserves his day in court; and Defendant's blanket allegations that the claims are "conclusory" and "vague" are simply an attempt to avoid justice for his wrongful actions. Furthermore, even if Plaintiff has failed to verify his FAC pursuant to FRCP 23.1, as alleged by Defendant, Plaintiff's original complaint was verified, as Defendant has himself conceded- so that the reasoning behind such verification requirements have been satisfied. Thus, Defendant has not been materially harmed by Plaintiff's failure to verify the FAC, and the FAC should not now be dismissed merely on this basis. Rather Plaintiff will separately make a motion to the court asking leave to amend its FAC in-order to verify it.

Finally, should the court decide to dismiss Plaintiff's federal claims and subsequently decline to exercise supplemental jurisdiction over Plaintiff's state law claims, in the interests of justice, Plaintiff hereby requests that the state law claims be dismissed without prejudice so that Plaintiff can refile those claims in federal court.

## II.    STATEMENT OF ISSUES

The Issues to be considered in deciding on Defendant's motion to dismiss are:

A. Whether the FAC states a Breach of Fiduciary Duty claim against Defendant (First Claim for Relief);

B. Whether the FAC states a claim for Conspiracy to Commit Conversion of Corporate Funds against Defendant (Second Claim for Relief);

C. Whether the FAC states a claim for Conversion of Corporate Funds and Other Assets against Defendant (Third Claim for Relief);

D. Whether the FAC states a claim for Conspiracy to Commit Fraud against Defendant with the requisite level of specificity mandated by FRCP 9(b) (Fourth Claim for Relief);

E. Whether the FAC states a Fraud claim against Defendant with the requisite level of specificity mandated by FRCP 9(b) (Fifth Claim for Relief);

F. Whether the FAC states an Unjust Enrichment claim against Defendant (Sixth Claim for Relief);

G. Whether the FAC states a cause of action for violation of federal securities laws, (Seventh Claim for Relief), and whether the Court should exercise supplemental jurisdiction over the remaining state law claims if it grants the motion to dismiss the Seventh Cause of Action for securities laws violations

## III.    MOTION

Plaintiff requests that the Court deny Defendant's motion to dismiss Plaintiff's FAC pursuant to FRCP12(b)(6) for failure to state a claim upon which relief can be granted and FRCP 23.1 for Plaintiff's failure to verify the FAC, as to all eight causes of action in the FAC.

## IV.    FACTS

All relevant facts known to Plaintiff at this stage have already been presented by Plaintiff in his FAC. For the sake of brevity and to Comply with Local Rules regarding page limits, Plaintiff refers the Court to the Factual Background Section of Plaintiff's FAC (Pages 14-31) to consider in conjunction with the arguments below in opposition to the motion to dismiss.

## V.    ARGUMENTS

**A. Plaintiff's Claim for Violations of the Securities Act of 1933 And The Securities Exchange Act of 1934 Does State a Claim.**

**1.    Plaintiff's Membership Interest In Intersango Does Qualify As A Security Under the 1933 and 1934 Acts**

Plaintiff's First Amended Complaint (FAC) states that Intersango LTD opened a Delaware LLC on or around July 5, 2011 in order to work with US individuals and entities in order to complete its business plan of operating as a world-wide BTC exchange. Despite agreement between the founders that ownership in the Delaware LLC would be equal, as stated clearly in the FAC, Defendant Patrick Strateman never passed over control over the entity, keeping it entirely himself. Thus, the tests of *Howey* and *Danner* cited by Defendant, are met. Plaintiff does indeed allege that he provided (1) investment money to Defendant in order to (2)

3

form the aforementioned common enterprise in the form of the Delaware subsidiary, with (3) profits to come solely from the efforts of others.

The profits of Intersango Delaware were solely reliant on Defendant properly registering to do business in the State and coordinating the entity with Intersango UK. The Delaware entity would indeed function separately from there, either as a pass through entity or a separate one for financial and or security reasons. All of this process and decision making was indeed under Defendant's sole control and responsibility, unless or until he transferred decision making authority, which he did not.

### 2.   Plaintiff's Alleged Transactions Did Not Occur Entirely Outside The U.S., And Therefore The Federal Securities Laws Do Offer Relief To Him

Defendant states that Plaintiff is not entitled to the protection of federal securities laws because his interest in Intersango was formed outside the United States. However, this is simply not the case. Intersango was formed via Legal Zoom, a U.S. entity. Furthermore, many of the alleged misrepresentations concerning Plaintiff's ownership interests were made inside the United States, as described elsewhere in this opposition.

### B.   Because Plaintiff Has Asserted a Colorful Federal Cause of Action, This Court Should Exercise Supplemental Jurisdiction Over The Remaining Claims

As Plaintiff has asserted above, there is a colorful federal claim here. For this reason, the Court should exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3). Even if the federal claim fails, the court can still exercise supplemental jurisdiction. The balance of factors weighs in favor of the Court exercising jurisdiction. Significant time and money has already been invested by the Plaintiff in this action, while Defendant has not only retained all of Intersango's assets, he has wasted and used such assets for his own personal benefit freely without consulting the other member managers of Intersango. Dismissing the claim so that Plaintiff has to refile in state court will only delay this matter further and will provide Defendant with more time to seize and conceal Intersango's assets.

**C. Plaintiff Has Sufficiently Stated Multiple Claims for Relief Under Delaware Law In His First Amended Complaint Such That The Court Should Deny Defendant's Motion To Dismiss The Complaint Pursuant To FRCP 12(b)(6)**

    **1. Plaintiff's Claims Satisfy The Standard of FRCP 12(b)(6) And Are Plausible On Their Face**

In his motion to dismiss the complaint, Defendant states that dismissal is proper where there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." (citing *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). Defendant further cites to case law to argue that vague allegations are not sufficient to support a legal theory. The Defendant argues that while a plaintiff is not required to plead in detail all of the facts upon which he bases his claim, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels or conclusions." (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The Defendant proceeds to cite to numerous other cases which all simply raise the same point, that is, that in order to survive a motion to dismiss, a complaint must allege sufficient facts that taken as true would entitle the plaintiff to relief.

As will be demonstrated below, Plaintiff has alleged specific facts demonstrating his entitlement to relief for all of his claims. Plaintiff has adequately presented the legal theories under which he is entitled to relief, and has provided numerous examples of specific instances of wrongs, including specific conversations with the Defendant, and the nature and circumstances surrounding such conversations. Indeed, Plaintiff has provided specific instances of wrongs perpetrated by Defendant that satisfy even the heightened pleading requirements for fraud based claims. In his motion to dismiss this complaint, Defendant states at Plaintiff only makes "vague" and "conclusory" statements and then points to certain parts of the FAC. Defendant completely ignores other sections of the FAC that do include specific facts, presumably because these do satisfy the standard of FRCP 12(b)(6).

### 2.   Plaintiff Has Pleaded His Fraud Based Claims With Particularity

As Defendant accurately asserted in his motion to dismiss, FRCP 9(b)'s heightened pleading requirements apply to Plaintiff's fraud claim and conspiracy to commit fraud claim. These heightened pleading requirements mean that fraud based claims must be made with particularity. As Defendant notes, these heightened pleading requirements serve several purposes, including providing defendants with adequate notice to defend the charges, and preventing against erroneous complaints without sufficient factual basis.

Defendant also cites to case law that states that the purpose of Rule (9)(b) is the require the plaintiff "to allege the who, what, where, and when of the alleged fraud." (citing to *Ackerman v. Northwestern Mut. Life Ins. Co.,* 172 F.3d 467, 469 (7th Circ. 1999)). It is not clear whether Defendant read the FAC in its entirety. Pages 48-53 of the FAC contain specific examples of fraud sufficient to meet the heightened pleading requirements of Rule (9)(b). Presumably such examples are ignored by Defendant in his complaint because they do satisfy this standard. These examples will be discussed in further detail below.

### 3.   Plaintiff has Properly Complied With Federal And State Requirements to File a Derivative Action.

#### a.   Plaintiff Verified the Original Complaint As Required by FRCP 23.1. Although Plaintiff Did Not Verify The First Amended Complaint, This Is a Procedural Issue Which Can Be Easily Rectified and Should Not Warrant Dismissal

As Defendant notes in his motion, Complaints in shareholder derivative actions must be verified pursuant to FRCP 23.1(b). "The purpose of the verification requirement is to discourage suits by plaintiffs who have no reason to believe that the accusations made in their complaints are true." *Glenbrook Capital Ltd. P'ship v. Kuo,* 525 F. Supp. 2d 1130, 1145 n. 6 (N.D. Cal. 2007).

As Defendant admits in his motion to dismiss, the Plaintiff verified his original complaint. This verification demonstrates that the plaintiff did have reason to believe the accusations made in his complaint are true. Although admittedly, Plaintiff failed to verify the amended complaint, this has not harmed defendant. Plaintiff can easily rectify this defect, and will respectfully request leave to amend the FAC from the Court to do so. Taking into consideration that the original complaint was verified, the fact that the FAC was not verified should *not* itself warrant dismissal given the merit of Plaintiff's other claims.

> b.  **Plaintiff Has made a particularized showing why Pre-Suit Demand Would Be Futile Citing To Relevant Delaware Case Law for a Derivative Action**

Under Delaware Chancery Court Rule 23.1, a shareholder seeking to vindicate the interests of a corporation through a derivative suit must either first make a demand on the corporation's directors, or plead particularized facts showing why such a demand would have been futile." (See, *In re Verisign*, 531 F. Supp. 2d at 1188 (citing FRCP 23.1)). Additionally, the Court must afford plaintiffs, all reasonable inferences that logically flow from alleged facts. *See, In Re Nat'l Auto Credit, Inc. S'holders Litig.* Here, Plaintiff has made clear that any demand on Intersango's other managers would be futile.

Delaware law provides two demand-futility tests, as set forth in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), overruled on other grounds by *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); and *Rales v. Blasband*, 634 A.2d 927 (Del. 1993).

When the complained of action does not constitute a business decision by the entire board, the Court should employ the *Rales* test, which determines whether the particularized factual allegations create a reasonable doubt that, as of the time the complaint was filed, a majority of

7

the board as constituted at that time could have properly exercised its independent and disinterested business judgment in responding to a demand. *See, Rales*, 634 A.2d at 934. Here, the business decision was Defendant's decision to stop allowing new registrations to Intersango's BTC exchange and to discontinue day to day operations of the Company. Since these actions were made unilaterally by Defendant and did not constitute a business decision by the entire board, Plaintiff's demand futility allegations should be examined under the *Rales* test. Delaware courts apply a slightly different test where the board takes no action. In such cases, "no business judgment has been made and thus the second prong of the Aronson test . . . is inapplicable." *Rales v. Blasband*, 634 A.2d 927, 933- 34 (Del. 1993). In these circumstances, the court must determine whether the allegations in the complaint "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006) (citing *Rales*, 634 A.2d at 934); see also, *Guttman v. Huang*, 823 A.2d 492, 503 (Del. Ch. 2003) (director's impartiality compromised when facing a substantial likelihood of personal liability for actions not covered under company's exculpatory charter provisions); *Rattner v. Bidzos*, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ("Directors are considered disinterested . . . when they 'appear on both sides of a transaction [or] expect to derive any personal financial benefit from it in the sense of selfdealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally. Here, it is clear that a majority of the board of directors ***were not*** disinterested or independent with regards to the decision to stop accepting new registrations to BTC marketplace.

### i.  **The Directors Are Interested**

In *Pogostin v. Rice*, 480 A. 2d 619 (1984), the court stated that directorial interest exists where divided loyalties are present, or a director either has received, or is entitled to receive a

personal financial benefit from the challenged direction which is not equally shared by shareholders. Here, there were obvious divided loyalties because rather than considering the best interest of all of Intersango's shareholders, which would have included Strateman, Taaki, and Norman, Norman was shut out of the decision to discontinue new registrations completely. Strateman in particular stood to gain from this decision because he retained control of all the BTCs in Intersango's marketplace, and by shutting out Norman, he could keep Norman's shares in Intersango for himself.

In his motion to Dismiss, Defendant states that "Plaintiff's allegations concerning Mr. Strateman's alleged usurpation of control of Intersango's BTCs as a breach of duty is inconsistent with Plaintiff's allegations of Plaintiff's, Taaki's and Mr. Strateman's agreed-upon division of responsibilities charging Mr. Strateman with implementing and maintaining the asset exchange software, having exclusive control over the BTCs deposited in the Company's marketplace and for maintaining security of Intersango's website." This statement by Defendant simply makes no sense. It is true that Mr. Strateman did have control over the BTCs deposited in the Company's marketplace. However, as described elsewhere, Defendant was a fiduciary of the Company. Just because he had the right to exclusive control over the BTCs, doesn't mean he could do anything he wanted with them. He still had a fiduciary duty to act in the best interests of the Company which he clearly didn't do here as evidenced by the fact that he seized and kept all of the BTCs for himself, and prevented the Company from continuing to expand and operate as usual. Plaintiff is not simply complaining that Defendant "failed to pay dividends" or to "distribute Plaintiff's capital immediately". Rather, Plaintiff is arguing that just because Defendant had the right to control over the BTCs in the marketplace doesn't mean he could abuse that power to make unilateral decisions on behalf of the Company, threaten the other

member managers when they objected to these decisions, and refuse to disburse BTCs and other assets to this day.

### ii. The Directors Are Not Independent

In *Pogostin v. Rice,* 480 A. 2d 619 (1984), the court found that in regards to independence the question of independence flows from an analysis of the factual allegations pertaining to the influences upon the directors' performance of their duties generally, and more specifically in respect to the challenged transaction. In *re Verisign,* the court state that "When lack of independence is charged, the plaintiff must allege particularized facts showing either that the board is dominated by an officer or director who is the proponent of the challenged transaction, or that the board is so under his influence that its discretion is 'sterilize[d].'" *In re Verisign,* 531 F. Supp. 2d at 1189 (citing *Rales,* 634 A.2d at 936). "If a director is considered "controlled" by another, interested, director, he or she is lacking in the independence necessary to consider the challenged transaction objectively." *Id.* A controlled director is one who is dominated by another party, whether through close personal or familial relationship or through force of will. A director may also be considered "controlled" if he or she is beholden to the allegedly controlling entity, as when the entity has the direct or indirect unilateral power to decide whether the director continues to receive a benefit upon which the director is so dependent or is of such subjective material importance that its threatened loss might create a reason to question whether the director is able to consider the corporate merits of the challenged transaction objectively.

Here, Taaki clearly was under Strateman's influence, as Strateman had used his position to usurp complete control over Intersango, and was making all business decisions with Taaki's acquiesance, and Taaki was loathe to oppose Strateman. Taaki was worried that if he didn't acquiesce to Strateman's actions, Strateman might shut down the Company completely, and refuse to distribute his shares in the Company to him. Indeed, as discussed above, the board was

10

dominated by Strateman who repeatedly threatened that if Norman and Taaki didn't comply with his demands, he would abandon the Company without turning over the Intersango database to the other member managers which would subject them to litigation from users who ha deposited BTCs on the Intersango exchange. *See also, Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006) ("Evaluation of a board's independence . . . requires a contextual inquiry. Not only must the Court consider the power and influence of the allegedly dominating person, but it also must assess the susceptibility of the directors to the exercise of that leverage; *Orman v. Cullman*, 794 A.2d 5, 25 (Del. Ch. 2002) (where court defined "controlled" director as one who is dominated by another, whether through close personal or familial relationship or through force of will; director may also be "controlled" by another if he or she is beholden to the allegedly controlling entity, such as when the entity has the unilateral power to decide whether the director continues to receive a benefit upon which the director is so dependent or of such subjective importance that the threatened loss of the benefit might create a reason to question whether the director can objectively consider the corporate merits of the challenged transaction).

Furthermore, as alleged above, despite repeated requests by Norman, Strateman and Taaki have taken no action to disburse Intersango assets to shareholders, including dividends and BTCs.  Strateman prevented Intersango from expanding and continuing to operate in a day-to-day capacity by refusing to allow new users to register with the site. Strateman also did not explore selling the Company or transferring its operations despite pleas from Norman to do so. Taaki essentially acquiesced to these actions by failing to prevent them.  These actions indicate that the Company's internal controls and communications were severely deficient, and that there was no independence among the directors, rather Strateman was exerting his influence on the

11

whole board. These actions further show that Stratemen was acting in his own best interest as opposed to that of all of Intersango's stockholders, so he cannot be said to be disinterested.

Defendant argues in his motion that Plaintiff's conclusory and speculative allegations regarding Taaki's state of mind should not be considered by the Court given Plaintiff's failure to verify these new allegations in his FAC and his inconsistent allegations in his original complaint. This is again a blatant attempt by Defendant to prevent Plaintiff from having his day in court and to escape responsibility for his harmful actions. First, as was already discussed, Plaintiff will respectfully request leave from the court in order to verify his FAC. This alone should not be the basis of the dismissal. Second, Plaintiff denies that he made inconsistent allegations. Plaintiff contends that Taaki, acquiesced to Defendant's actions and he did so out of fear because Strateman controlled all of the Company's assets. Plaintiff refers Defendant to Black Law's Dictionary, which defines the Amendment of a Pleading as "the changing of a pleading that will correct any errors and make a more accurate presentation of the facts." Indeed, this is the whole point of an Amended Complaint, to provide the Court with a more comprehensive picture of the matters at issue so that it can make a fair ruling of the facts. Throughout his motion, Defendant continually states that new facts which have come to light should not be considered because they are just now being raised, but this flies in the face of pre-trial pleadings. Finally, the statements regarding Taaki's motivation and state of mind are based on discussions that occurred at the time with the Plaintiff, and based on the standards of motions to dismiss must be viewed in the light most favorable to the Plaintiff, so the Court should take these factual allegations as true. The full extent of these conversations will become clear during discovery.

**4. Plaintiff' Fraud and Conspiracy To Commit Fraud Claims State Claims Upon Which Relief Can Be Granted And Are Not Time-Barred**

**a. The Fraud Based Claims Satisfy Both Delaware Law And FRCP 9(b)**

12

Under Delaware, a claim for fraud requires "(1) a false representation of material fact; (2) made by a person with knowledge that the representation is false, or with reckless indifference to the truth; (3) an intention to induce the person to whom it was made to act or refrain from acting in reliance upon it; (4) causing that person, in justifiable reliance upon the false statement, to take or refrain from taking action; (5) causing such person to suffer damage by reason of such reliance." *Airborne Health, Inc. v. Squid Soap, LP* 984 984 A.2d 126 (Del. Ch. 2009). Court of Chancery Rule 9(b) requires that '[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity.' The relevant circumstances are 'the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person( s) gained from making the misrepresentation.' *Trenwick Am. Litig. Trust v. Ernst & Young LLP,* 906 A.2d 168 (Del. Ch. 2006). The core test is whether the claim has been pled 'with detail sufficient to apprise the defendant of the basis for the claim." *Abry Partners V, LP v. F & W Acquis. LLC*, 891 A.2d 1032 (2006).

In his motion to dismiss the Fraud-Based claims, Defendant states that Plaintiff makes "non-specific allegations that Mr. Strateman committed fraud." Defendant further states that these allegations are insufficient under Delaware law because "Plaintiff has not alleged that Mr. Strateman made any false statements of fact, or what Mr. Strateman gained by making such purported statements; rather the allegations are of an intended future action at a non-specific date." Finally, Defendants states that Plaintiff failed to meet the heightened pleading requirements under FRCP 9(b) which requires particularized allegations of the circumstances constituting fraud, including the time, place and content of the alleged misrepresentation or omission.

13

Plaintiff refers the Court back to his FAC. Indeed, it is quite clear Plaintiff's fraud based claims are based on specific instances of fraud which meet the above requirements, and are specifically ignored by the Defendant in his motion to dismiss. Not only did Plaintiff provide specific examples of misrepresentations of statements of fact made by Defendant, Plaintiff clearly laid out what Defendant stood to gain by such statements, and included the time, place, and circumstances of such statements. Indeed it is not clear how much more specific Plaintiff could be and this is simply a blatant attempt by the Defendant to have this claim dismissed rather than give Plaintiff his day in court as justice requires. Below, Plaintiff is including again such specific instances of alleged fraud:

(1) Strateman unilaterally shut down the Company's U.S. trading site on October 14, 2012. At the time he misrepresented to Norman and Taaki that he would reopen the site in the future if Intersango's legal situation became more clear or if Intersango had the funds in the future to continue USD bitcoin trading. Strateman misrepresented that his actions were necessary because Intersango's profits "couldn't be touched" as a result of the pending litigation, and that Intersango did not otherwise have the funding to continue full operations. This was a specific misrepresentation, as Intersango's profits could have been accessed by Strateman, he just chose not to do so. Strateman claimed that his actions were in the best interests of the company, and Plaintiff believed him at this time. These were misrepresentations because at the time, Intersango had significant assets in the form of BTCs and could have continued to operate. Strateman made these misrepresentations so that Norman and Taaki would refrain from taking any legal or other actions on behalf of themselves or the Company. Upon information and belief, this also provided Strateman and Jamie Strateman with the opportunity to move, convert, and

14

conceal all of the assets of the Company, which they never intended to divide with the other member managers of the Company.

(2) In 2013 Norman met with Strateman in Poland to sign a bank check which would allow a GBP deposit to be deposited into a Polish bank. When they met, Norman and Strateman had a conversation regarding the future direction of the Company. Strateman misrepresented at the time that he would disburse the BTCs that the Company owed to Norman and to the other member managers of Intersango. Strateman also assured Norman that he would continue to operate the site and that the current actions were due to temporary legal, tax and accounting problems which were being handled, and which are the reasons why Intersango's money couldn't be touched. Strateman further reassured Norman that after those issues were resolved, Intersango would be able to put the rest of its existing money into reopening operations, or alternatively, the site could be sold/migrated to another business. At this time, Norman still believed that even though Strateman was exercising complete control of the Company, that the interests of all three member managers were aligned. In fact, Strateman never intended to pay back the Company's BTCs and other assets to the other member managers of Intersango. Strateman made these misrepresentations so that Norman and Taaki would refrain from taking any legal or other actions on behalf of themselves or the Company. Upon information and belief, this also provided Strateman and Jamie Strateman with the opportunity to move, convert, and conceal all of the assets of the Company, which they never intended to divide with the other member managers of the Company.

(3) On January 14, 2013, Norman emailed Jamie Strateman, stating: "As for Intersango, I'm wondering what the balance sheet is et cetera. I've been asking for a long time and I still

15

haven't heard. Just because Patrick stopped talking to me doesn't mean he doesn't have a responsibility. I am assuming there are no outrageous expenses happening and there aren't any weird trades going on. Since it is basically my savings I will want to look at all the expenses at some point. Patrick will have to talk to me at some point about this after the final payments go out so we can wrap things up. If my friend won't buy Intersango, we can simply auction it online which might be the best thing to do anyway." Jamie Strateman responded by email on January 14, 2013, stating that "Patrick is doing his best to operate Intersango on his own, to defend against the SF lawsuit and move thigs along to resolving it. He is also working on his own projects. He is also stuck dealing with attorneys, the lawsuit, and liquidators. I doubt these are expenses that you would disagree with. From what I can see, Patrick is working to preserve the value for the 3 of you." This was a clear misrepresentation by Jamie Strateman. Rather than respond to Norman's request regarding access to the finances of the Company, Jamie Strateman was trying to reassure Norman that Strateman was still working in the best interests of the company and all three member managers when this in fact was not the case. These misrepresentations were made so that Norman and Taaki would refrain from taking any legal or other actions on behalf of themselves or the Company. Upon information and belief, this also provided Strateman and Jamie Strateman with the opportunity to move, convert, and conceal all of the assets of the Company, which they never intended to divide with the other member managers of the Company.

(4) In the end of January 2013 Norman reached out to Strateman by email asking him what was going to happen to the Company's IT, and asking Strateman to explore options for selling the Company's IT. Norman receive a response from Strateman's mother, Jamie

16

Strateman saying that  Patrick the lawsuit right now and is focused on that. Jamie Stratemen proceeds to say "you'll be happy with how this turns out." Jamie Strateman made these misrepresentations so that Norman and Taaki would refrain from taking any legal or other actions on behalf of themselves or the Company. Upon information and belief, this also provided Strateman and Jamie Strateman with the opportunity to move, convert, and conceal all of the assets of the Company, which they never intended to divide with the other member managers of the Company.

(5) Upon the resolution of the lawsuit in late 2015/early 2016 Strateman communicated to Norman a self-imposed deadline for such a distribution of Intersango's BTCs.  Strateman, using his mother Jamie Strateman as a proxy, asked Norman to have a document notarized on or around March or 2016, which stated that Norman would accept to the BTC address any payment as payment of debts that Intersango owes Norman. This was necessary in order to have every BTC transaction registered in the key chain to have it cashed out. Strateman represented to Plaintiff that the amount of BTCs in the Intersango coffers had not changed, meaning there were still over 7000 BTCs on the books. This was a specific misrepresentation, as Strateman later claimed all the BTCs had been used to defend the San Francisco lawsuit. Norman, following these instructions, had the document notarized and delivered back to Strateman. Strateman picked up this document, and made a test payment. Strateman then told Norman that he would pay him within 30 days. This was also a very specific misrepresentation, and not simply a vague promise to pay sometime in the future. No payment was made within this 30-day deadline. Norman then reached out to Strateman, who at this point ceased answering his phone or responding to Norman in any other way.  Strateman has still not distributed Intersango's

17

assets to Norman or the other shareholders, despite Norman's repeated requests that he do so.  Strateman made these misrepresentations so that Norman and Taaki would refrain from taking any legal or other actions on behalf of themselves or the Company. Upon information and belief, this also provided Strateman and Jamie Strateman with the opportunity to move, convert, and conceal all of the assets of the Company, which they never intended to divide with the other member managers of the Company.

Furthermore, because there is a viable claim for fraud, the conspiracy to commit fraud claim should not be dismissed either, as Plaintiff has not presented any arguments stating that it should be dismissed other than the argument that it should be dismissed if the underlying fraud claim is dismissed.

### b.  The Fraud Based Claims Are Not Time-Barred Under Delaware Law

Defendant argues in his motion to dismiss the Fraud based claim that this claim is barred by the applicable three year Delaware Statue of Limitations. Defendant claims that "Plaintiff improperly includes legal arguments in the FAC regarding the theory of equitable tolling on the basis of self-dealing…." Defendant also states that "those arguments fail because Plaintiff alleges that Defendant Jamie Strateman told him that Intersango's BTCs had been used for Intersango's defense in the San Francisco lawsuit, not for Mr. Strateman's benefit.

It is not clear at all from these improper arguments why the equitable tolling doctrine should not apply to toll the statute of limitations for the fraud based claims. It is true that under Delaware law, a plaintiff's cause of action accrues at the moment of the wrongful act, not when the harmful effects of the act are felt even if the plaintiff was unaware of the wrongful act. However, it has also been found that application of the three-year limit set forth in the statute of limitations "may be tolled until such time as a reasonably diligent and attentive stockholder knew

18

or had reason to know the facts alleged constitute a wrong (see *In Re Maxxam, Inc., 659 A.2d 760 (1995)).* "Under the theory of equitable tolling, the statute of limitations is tolled for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where plaintiff reasonably relies on the competence and good faith of the fiduciary." *In re dean witter P'ship Litig.,* 725 A.2d 441 (Del. 1999).

To invoke equitable tolling, a claimant must allege a fiduciary relationship, actionable or fraudulent self-dealing, and a lack of inquiry notice. *See, Bovay v. h.m. byllsby & Co.*, 88 F.2d 990 (5th Cir. 1937) (equitable tolling requires "an abuse of the fiduciary relationship through actionable self dealing"). *See, also, Kahn v. Seaboard Corp.* Civil Action No. 11485, Court of Chanery of Deleware (1993)*,* holding that to survive a motion to dismiss based on equitable tolling, the allegations must demonstrate "a reasonable conceivable" base for it to apply.

Here, the above specific examples demonstrate that Strateman and Jamie Strateman continuously made misrepresentations so that Norman would refrain from initiating legal action on the Company's behalf against Strateman. Strateman was clearly in a fiduciary relationship as he was a member manager and officer of Intersango, and was essentially unilaterally controlling the company. Finally, these misrepresentations were made to cover up the self-dealing that Strateman and Jamie Strateman were involved in, namely concealing and converting the Company's assets including BTCs.  Indeed, it was not until Plaintiff was told by Defendant Jamie Strateman that Intersango's BTCs had been used for Strateman's defense in the San Francisco lawsuit, that he knew something was amiss. He trusted Defendant as a fiduciary until that time.

For similar reasons, the doctrine of latches should not apply to preclude the claim. Plaintiff did not "sit by in silence while positions were fundamentally changed" as in the case

law cited by the defendant. Instead he constantly inquired regarding his rights and assets and did not know that any wrongdoing had occurred until he was told there were no assets left in the Company.

### 5.   The FAC States a Viable Claim For Conversion and Conspiracy To Commit Conversion

In his motion to dismiss the Conversion claims, Defendant argues that no Delaware court has recognized a cause of action for conversion of money as opposed to goods. Defendant further argues that money is subject to conversion only when it can be described or identified as specific chattel.

This argument fails for several reasons. First, as was argued in the FAC, unlike money, BTCs are digital currency that can be specifically identified. Courts have generally not recognized a cause of action for conversion of money because it is difficult to specifically identify money. This is not the case in the instance of BTC all of which have a specific block-chain signature.

In an attempt to circumvent this argument, Defendant states that "Plaintiff has made no attempt to specifically identify *which* BTCs he had a right to possess, nor is he seeking recovery of those specific BTCS." The reason that Plaintiff has not specifically identified the BTCs is that Defendant has complete control over the "digital wallet" of Intersango, that is, the list of all of the BTCs currently and that have ever been a part of Intersango's assets. Plaintiff has repeatedly requested that Defendant share this information with Plaintiff so that Plaintiff would have a better understanding of the assets of the company, but Defendant has refused to do so. Once this matter proceeds to discovery, Plaintiff will be able to request this information from Defendant and see specifically which BTCs are at issue.

Moreover, Defendant's claims that there is no conversion claim because Plaintiff is not suing derivatively on behalf of Intersango are unavailing and unconvincing. The assets in the

20

Company including all of the BTCs belonged to Intersango. When Plaintiff, Defendant, and Amir Taaki decide to enter into a business relationship, they agreed to share all profits and assets of the company equally. This would include dividing all of the assets upon the winding down of the company including all of the BTC's. Thus, the Company itself was injured and the assets including all BTCs should be returned to the Company. Once this is done, the assets will then be divided between the owners (minus legal and other fees), where they will flow to Plaintiff and the other member managers. Arguing who the money should go to is not the point- the point is that Defendant has seized and absconded with Company assets that weren't his, and by seeking to dismiss this complaint he is seeking to get away with it.

Finally, because there is a viable underlying claim for conversion, the conspiracy to commit conversion claim should not be dismissed, as Defendant's only basis for having it dismissed is that the underlying conversion claim fails.

### 6. The FAC States a Viable Claim For Breach Of Fiduciary Duty

#### a. Plaintiff Presents a Viable Claim For Breach Of Fiduciary Duty in the First Amended Complaint And Underlying Wrongful Acts Have Been Pleaded Sufficiently.

In his motion to dismiss the breach of fiduciary duty claim, Defendant cites to case law, which states that "A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." (citing to *Beard Research, Inc. v. Kates,* 8 A.3d 573, 601 (Del. Ch. 2010), a*ff'd sub nom. ASDI, Inc. v. Beard Research, Inc.,* 11 A.3d 749 (Del. 2010). Defendant further states that a breach of fiduciary duty occurs when a fiduciary commits an unfair, fraudulent, or wrongful act.

Defendant does not appear to dispute that he owed the Company and the other member managers fiduciary duties. Apparently, his only basis for dismissing this cause of action (besides arguing erroneously that it is time-barred below) is that Plaintiff has "failed to sufficiently allege

21

that Mr. Strateman committed any unfair, fraudulent, or wrongful acts." However, Plaintiff has clearly sufficiently alleged numerous harmful acts throughout this opposition and the FAC, including but not limited to fraud, conversion, conspiracy to commit fraud, and conspiracy to commit conversion. Additionally, he has seized and continues to control all of the Company's assets to this day and refused to distribute any of such assets to the other member managers or to return them to the Company to the Company's detriment. On this basis, Plaintiff's claim for breach of fiduciary duty has been pled sufficiently.

### b.   Plaintiff's Claim For Breach Of Fiduciary Duty Is Not Time-Barred

The same doctrine of equitable tolling that applied to the fraud claim should apply to the breach of fiduciary duty claim as well, such that this claim should not be time-barred. Plaintiff refers the Court to the arguments above. In essence, Plaintiff still trusted that Defendant was acting in the best interests of the Company as Defendant was a fiduciary of the Company. It was not until after the conclusion of the San Francisco lawsuit when he was told that Intersango no longer had any BTCs that Plaintiff new something was amiss. The doctrine of equitable tolling should apply to that date and the for that reason, Plaintiff contends that the breach of fiduciary duty claim is timely and should not be barred.

### 7.   The FAC States a Viable Cause Of Action For Unjust Enrichment Which Is Not Time Barred

In his motion, Defendant states that Plaintiff's allegations do not satisfy the elements of unjust enrichment because Plaintiff has not alleged how Mr. Strateman has been enriched or how Plaintiff has been impoverished. Plaintiff refers to the court back to Plaintiff's FAC, where Plaintiff clearly lays out the elements of unjust enrichment, and how those elements were met here.

The Unjust enrichment is "the unjust retention of a benefit to the loss of another against the fundamental principles of equity and good conscience." *Nemec v. Shrader,* 991 A.2d, 1120,

22

1130 (Del. 2010). The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, an (5) the absence of a remedy provided by law."

Here, it is quite clear that Defendant was unjustly enriched by seizing and retaining all of Intersango's assets, including assets which would have eventually been distributed to Norman and Taaki, and refusing to return those assets. It is also quite clear that Plaintiff was impoverished, both because the other member managers of Intersango were owed millions of dollars from the assets they invested in Intersango, including thousands of BTCs, and because the Company itself was deprived of those assets which prevented it from continuing to function and generate revenue.

Furthermore, Defendant States that Plaintiff could not allege that Mr. Strateman has been enriched or how Plaintiff has been impoverished "as Plaintiff alleges that he was told that all of Intersango's BTCs had been used for its legal defense in the San Francisco lawsuit." It is not clear from this statement how that would preclude a finding that Defendant was enriched or that Plaintiff is impoverished. Plaintiff clearly claimed that Defendant was using corporate funds in order to defend himself in a separate lawsuit without seeking board approval. Furthermore, he apparently used an inordinate amount of money to defend himself in doing so. In this sense, Intersango was injured because corporate funds were used to pay for Defendant's own legal defense.

Finally, the unjust enrichment claim is not time-barred for the same reason that the other claims are not time-barred. The doctrine of equitable tolling should toll this claim until after the conclusion of the San Francisco lawsuit, because Plaintiff still believed that Defendant was acting in the best interests of the Company and did not believe he would be involved in self-dealing in order to enrich himself.

## VI.   CONCLUSION

23

1        For the foregoing reasons, PLAINTIFF respectfully requests that the Court dismiss

2  DEFENDANT's motion to dismiss the COMPLAINT.

3  Dated this 7th day of November, 2016

4                                   /Nate Kelly/

5                                 Attorney for Plaintiff

6                                 Donald Norman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25